# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DAVID McLEOD,

    Petitioner,

v.                                                                             CASE NO: 8:08-CV-2505-T-30TBM

ATTORNEY GENERAL, STATE OF
FLORIDA, et al.,

    Respondents.
_____/

## ORDER

This cause is before the Court upon the petition (Dkt. #1) of David McLeod (hereinafter "Petitioner" or "McLeod") and Respondents' response (Dkt. #15). Petitioner has not filed a Reply. After review and consideration, the Court determines that the petition should be denied because it fails to satisfy the requirements of 28 U.S.C. § 2254(d) and (e).

## BACKGROUND

McLeod was convicted by a jury of lewd or lascivious molestation of a child less than twelve years of age, burglary of a dwelling with an assault or battery, burglary of an occupied dwelling, and trespass of an occupied structure, in Manatee County, Florida. He was sentenced to twenty years imprisonment followed by ten years of probation on Counts One and Two, fifteen years imprisonment on Counts Three and Four, and time served as to Count

Five, with all sentences running concurrently.

McLeod's appointed counsel filed a direct appeal raising one issue:

> The trial court committed reversible error when it allowed the jury to take the videotape of [the victim's] testimony to the jury room during their deliberations, despite defense counsel's objections.

The appellate court affirmed *per curiam* without written opinion. McLeod v. State, 906 So. 2d 1070 (Fla. 2d DCA 2005) [table]. McLeod's motion for rehearing was denied on August 11, 2005.

McLeod, through retained counsel, filed a petition in the District Court of Appeal on September 12, 2006, asserting ineffective assistance of appellate counsel. The petition contended that appellate counsel should have raised two additional grounds on appeal:

(1) The trial court erred in denying McLeod's motion for judgment of acquittal for the four burglary counts; and

(2) The trial court erred in denying McLeod's motion to sever the charges.

The appellate court denied the petition without opinion on September 20, 2006. McLeod v. State, 940 So. 2d 1133 (Fla. 2d DCA 2006) [table]. The motion for rehearing, certification, and/or issuance of written opinion was denied on October 24, 2006.

On October 6, 2006, McLeod's retained counsel filed a motion for post-conviction relief pursuant to Florida Rule of Civil Procedure 3.850 which, after being twice amended, asserted five grounds of ineffective assistance of trial counsel and one ground of cumulative error. On February 7, 2008, the post-conviction court issued a written order summarily denying all claims. McLeod appealed. The appellate court affirmed *per curiam* without

written opinion on November 14, 2008.  McLeod v. State, 997 So. 2d 415 (Fla. 2d DCA 2008) [table].  The motion for rehearing was denied on December 22, 2008.

McLeod timely filed his petition with this Court on December 17, 2008, asserting nine grounds for relief.

## STANDARD OF REVIEW

Since McLeod's petition was filed after April 24, 1996, it is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  The AEDPA limits this Court's habeas review in evaluating rulings made by state courts as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Seven of McLeod's nine grounds assert ineffective assistance of counsel.  Where a claim of ineffective assistance of counsel is made, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficient performance is performance which is objectively unreasonable under the prevailing professional forms.  Id. at 688.  Prejudice results when there is "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Eleventh Circuit has held that "[w]hen applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). "To state the obvious: trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)).

Under Strickland, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

## **DISCUSSION**

The petition raises nine grounds. Each will be discussed in turn.

**Ground One:** The Petitioner's rights to due process and a fair trial were violated when the court erred in allowing the jury to view the alleged victim's video testimony during deliberation.

Ground One raises a state law evidentiary issue -- that in ruling that the jury could view the victim's video testimony during deliberation, the trial court violated Petitioner's due process rights. In general, federal courts do not sit to review evidentiary rulings made by state courts. Osborne v. Wainwright, 720 F. 2d 1237 (11th Cir. 1983). This is true even where a petitioner couches his argument in terms of due process. Willeford v. Estelle, 538 F. 2d 1194 (5th Cir. 1976). Federal habeas relief is only available where an error is so egregious that it substantially undermines the fundamental fairness of the trial. Brecht v. Abrahamson, 507 U.S. 619 (1993).

At trial, defense counsel stipulated that the videotaped deposition of the victim would be admitted in lieu of her live testimony. The victim was only five years of age. See Florida Statute 90.803(23). McLeod argued this issue on direct appeal relying on Young v. State, 645 So. 2d 965 (Fla. 1994). In Young, the Florida Supreme Court held that the videotaped out-of-court interviews with a child victim introduced into evidence should not be allowed into the jury room during deliberations. The court noted that this ruling would not prevent a trial judge from allowing the jury to view the videotape a second time in open court upon request.

During closing arguments the prosecutor suggested that the jury watch the tape of the child's testimony if it had any doubts about guilt. When defense counsel objected, the attorneys had the following discussion with the judge at the bench:

> MR. EGER [Defense Counsel]: We agreed that the videotape was substituted as the child directly testifying. We didn't stipulate that they could take it back in and watch the videotape.

> MS. FRADLEY [Assistant State Attorney]: He entered it into evidence.
>
> MR. QUISENBERRY [Assistant State Attorney]: No, but it can be watched again by the jury as a group. They can watch it again, as any evidence.
>
> MR. EGER: Well, then I misunderstood because it was my understanding that in lieu of the child testifying we were permitting that to be used, substitute for her live testimony. It would be like, well, we want to bring David back so we can ask him questions or listen to his testimony.
>
> MR. QUISENBERRY: That's true, Judge, but because it was also admitted as hearsay; it was admitted by this court as hearsay, so the jury could reconvene and watch it as a group like any other hearsay evidence.
>
> THE COURT: Yeah, videotape's been introduced into evidence, so they can take a look at it.
>
> MR. EGER: Then I'll have a standing objection on that.
>
> THE COURT: Okay.

(Exh 21: Vol. 3: T 399).

Under Florida law, defense counsel was correct – the jury should not be allowed to view the videotaped testimony in the jury room during deliberations. While the state trial court may have been in error in ruling to the contrary, this ruling does not rise to the level of a violation of Petitioner's federal constitutional rights. It did not affect the fundamental fairness of the trial.

Additionally, it does not appear from the record that Petitioner was prejudiced in any way by the state trial court's ruling. There is no indication that the jury ever requested to view the video again or that they had the equipment necessary to view it in the jury room. Had they wished to see it again, it would have been proper under Florida law to allow a

second viewing in court, but the jury did not make this request. Therefore, Petitioner has not shown that he was prejudiced by the court's ruling.

For the foregoing reasons, Ground One fails.

**Ground Two:** Appellate counsel was ineffective in failing to raise the preserved issue that the trial court erroneously denied Petitioner's motion for judgment of acquittal.

In support of Ground Two, McLeod argues the state failed to prove beyond a reasonable doubt that, when he entered the residences, he had intended to commit a crime. Further, he argues that the state failed to establish that he entered the residences in a stealthy manner. This is important because, under the law of Florida, stealthy entry without an owner's consent is sufficient to establish *prima facie* evidence of an intent to commit an offense. Florida Statute §810.07 (2003).

First, a state trial court's ruling on the sufficiency of evidence necessary to overcome a motion for judgment of acquittal is not grounds for federal habeas relief. Summerville v. Cook, 438 F. 2d 1196 (5th Cir. 1971). As long as the evidence presented is sufficient to support the notion of a fundamentally fair trial, an accused federal's constitutional rights are not violated. The state, in their response, adequately summarized the evidence in this regard:

### State's Case in Chief

During the State's case in chief, the following evidence was adduced at trial. Amy Spires was living at 5920-36th Ave. Circle West in Bradenton on June 22, 2003. She was awakened by the sound of her bedroom door opening and hitting against her closet door. (Exh 21: Vol. 3: T 138-139) Then her two cats, which had been locked in her spare bedroom, jumped on her bed, startling her. She rolled over, sat up and found a man standing over the side of the bed where her boyfriend was sleeping. (Id. at 140). Initially she thought it

was her boyfriend's friend, because he had been talking to him on the telephone earlier. The man kind of pushed her boyfriend Nathan and said, "They want you outside." Thinking there was something going on with the neighbors, Ms. Spires told him to go. Nathan obligingly got up and followed the man outside. (Id. at 141).

At that point Ms. Spires realized the man wasn't anyone they knew. She stayed inside and checked to see if there was anything amiss. (Id. at 142). Although all the lights had been off and it was dark, nothing was knocked over or disturbed and nothing had been taken. Ms. Spires saw the same man (McLeod) later that evening standing beside a police car. (Id. at 143).

Nathan Hoeksema, Ms. Spires's boyfriend, testified that he and Ms. Spires had gone to bed around 11:00 p.m.. Earlier that evening a friend had called to ask him about a broken-down truck. (Id. at 148). Later, someone touching him on his back awakened him. He identified McLeod as this person. Mr. Hoeksema said he hadn't given McLeod permission to be there. (Id. at 149). Then Ms. Spires had said, "Who are you" or "What are you doing here?" At that point Mr. Hoeksema realized McLeod was some sort of intruder, got up and followed him out the door. (Id. at 150). By the time Mr. Hoeksema got out of the bedroom, McLeod was walking briskly out of the front door. Nothing in the house appeared to have been taken, nor was anything out of place or even touched. (Id. at 151). Both Ms. Spires and Mr. Hoeksema said that McLeod didn't appear to be intoxicated or impaired. McLeod went across the street and stood there while a police car drove by, then he went into some bushes and that was the last Mr. Hoeksema saw of him until he saw him later next to a police car. (Id. at 152, 153).

Tiffany Gillam was living at 5909-35th Ave. West on June 22, 2003, with her two girls, ages nine and six. (Id. at T 162-163). The girls were sleeping on couches in the living room, because their bedroom carpet had just been cleaned. She and her husband had gone to bed around 10:30 or 11:00 p.m. (Id. at 164).

Ms. Gillam was awakened by her younger daughter saying, "Mommy." (Id. at 166). Then she heard her older daughter screech loudly. She ran into the living room and saw McLeod standing over her younger daughter pulling up his pants, removing one of his legs from the sofa as he did so. (Id. at 167). McLeod didn't say anything and Ms. Gillam chased him through the living room, dining room and kitchen and out the garage door. (Id. at 170). Ms. Gillam said she didn't know McLeod and he didn't have permission to be in

her house. The last thing Ms. Gillam saw, was McLeod running towards her neighbor Shay Sullivan's house. (Id. at 171).

Minutes after McLeod left, Ms. Gillam asked her younger daughter what had happened. Her daughter told her that the man had pulled down her pants and "rubbed his pee-pee" on her face. (Id. at 172-173). Ms. Gillam noted that her daughter's pants were awry, though they hadn't been when she put her to bed earlier. Although the living room was full of furniture and children's toys, nothing was askew, or knocked over. (Id. at 176). From her observations, Ms. Gillam didn't believe that McLeod was intoxicated or impaired. (Id. at 179)

The nine-year-old girl explained she and her younger sister had been sleeping on couches in the living room. Her sister moaning had awakened her. At first she thought it was her Dad giving her sister some medicine for her cough, then she realized it was a strange man standing over her sister. He was standing with his back to her, so she couldn't see his face or front of his body. (Id. at 192-1933). The oldest daughter screamed, then her mother ran out, followed by her father, and chased the man. (Id. at 194).

Pursuant to a stipulation between the State and defense, a videotape of the youngest daughter's (victim's) deposition was introduced into evidence in lieu of her live testimony. McLeod waived any possible hearsay or confrontation issues. According to the victim, she had been sleeping on the couch. (Id. at 243). She was awakened by the sound of feet. She saw a "big guy" standing by her mother's room. (Id. at 247). The guy came over to her and "rubbed his pee-pee" on her face. She tried to push him away, then he pulled down her pants. (Id. at 250). Then her sister woke up and said, "Mommy, mommy" very loudly. (Id. at 25l). The man ran and her mother and father ran after him. (Id. at 255).

Julie Blackwell was living at 3701-6lst Street West on June 22, 2003. Her son had a friend spending the night. The friend lived right behind them. Her son and his friend were to sleep in the living room and were playing video games. (Id. at 201-202). Ms. Blackwell said that she didn't know McLeod and he wasn't someone she had invited or let into her home.

Around 12:30 a.m., Ms. Blackwell awoke to find someone standing in her bedroom door. (Id. at 203). Initially she thought it was her son's friend. According to Ms. Blackwell, her bedroom door was left open so she could hear the baby. Her bedroom door started to close and then the air-conditioner came

on, which caused the door to be sucked closed. (Id. at 204). At first, Ms. Gillam was annoyed thinking it was the boys trying to play video games, instead of going to bed. She got up and opened the bedroom door and saw someone go around the corner in the hallway leading to the garage. (Id. at 205). Ms. Blackwell came around the corner as the someone went out the door to the garage. (Id. at 207). Still thinking it was her son's friend and that he was sleepwalking or trying to go home, she turned on the garage lights and saw, to her surprise that the garage door was open, although it had been closed earlier. (Id. at 208-209). As the person left the garage, she screamed for her husband. She told him one of the boys had gone outside and she didn't know where he was going. However, when she looked in the living room, both boys were there asleep. It was then she realized someone had been inside her house and her husband telephoned the police. (Id. at 2l1-213). Ms. Blackwell, too, said that nothing in her house or garage appeared to have been moved or taken, although she did find a bottle of Bacardi rum and a pair of flip-flops in the foyer. (Id. at 214). McLeod's identity as the person in Ms. Blackwell's house was stipulated to by the defense. (Id. at 220).

Shay Sullivan was watching television the evening of June 22, 2003. He had his windows open because his air-conditioner was broken. (Id. at 221). He noticed several police cars driving by without any of their lights on as if they were looking for something. A few minutes later he heard a scream from next door and went onto his patio to investigate. (Id. at 222). He saw a person run across his neighbor's yard and climb over the fence. The person ran up to the screen of Mr. Sullivan's pool enclosure and punched his way through. (Id. at 223-224). Mr. Sullivan grabbed him and held him until the police arrived seconds later. (Id. at 225). Mr. Sullivan said McLeod (his identity was stipulated to) didn't have permission to enter his screen enclosure. (Id. at 226-227).

Officer Jay Gow was first dispatched to 3701-6lst Street West. (Id. at 228). After receiving a brief description, he and other officers searched the area until they received another complaint from the same area, and then another. Finally they were told a suspect was being held at 5909-35th Ave. West. (Id. at 230). Officer Gow inspected the Gillam house, and deduced that someone had pried open the jalousie window on the side garage entrance and then reached through and unlocked the deadbolt. (Id. at 231). The defense stipulated that the footprint found on the kitchen floor of the Gillam house belonged to McLeod. (Id. at 233).

The foregoing evidence was sufficient to present a *prima facie* case. The state trial court did not commit error in denying McLeod's motion for judgment of acquittal and, therefore, his appellate counsel was not ineffective in failing to raise the issue on appeal. It is not ineffective assistance to fail to raise a meritless issue. Therefore, Ground Two will be denied.

**Ground Three:** Appellate counsel was ineffective for failing to raise on appeal the denial of trial counsel's motion to sever the charges in this case.

As seen from the discussion in Ground Two, McLeod's charges stem from one criminal episode in which he entered several residences seriatim. His trial counsel filed a motion to sever requesting that each residential entry be tried separately. While it does not appear from the record that the motion was specifically denied, the counts were tried together and therefore the Court will assume that the motion was denied.

The issue of joinder of offenses is a state law matter to be decided within the broad discretion of the state trial court. The only issue before this Court in a federal habeas proceeding is not whether the trial court was right or wrong, but whether the trial of separate offenses together actually rendered the state trial unfair such that it violated a defendant's federal constitutional rights of due process. To prevail on this claim, a petitioner must show more than the potential for prejudice. He must show actual prejudice resulting from the events of the trial. Tribbitt v. Wainwright, 540 F. 2d 840 (5th Cir. 1976); see also Hernandez v. Conway, 485 F. Supp. 2d 266 (WDNY 2007).

Here, the charged offenses arose out of the same criminal episode. Each of the separate entries technically would have been admissible at the trial of each of the other offenses to show a complete picture of what transpired and to show acts of similar conduct. Consequently, there is no indication of any undue prejudice by trying the counts together.

By couching this ground in terms of ineffective assistance of appellate counsel, Petitioner fares no better. Florida Law of Criminal Procedure 3.150(a) allows offenses to be tried together "when the offenses . . . are based on the same act or transaction or on two or more connected acts or transactions." Had appellate counsel raised this issue on appeal, there is no likelihood that there would have been any different outcome. Appellate counsel cannot be deemed ineffective for failing to raise a meritless argument. Therefore, Ground Three will be denied.

**Ground Four:** Trial counsel was ineffective for stipulating to the admission of the alleged victim's video testimony without realizing it could be viewed by the jury in deliberations.

In Ground Four, Petitioner makes the same argument that he made in Ground One but couches it in terms of ineffective assistance of counsel. He argues that his counsel was ineffective for stipulating the victim's video into evidence without realizing that would allow it to be seen by the jury during deliberations. As explained in Ground One, Petitioner's trial counsel was correct that such video should not be viewed by the jury during their deliberations in the jury room. Young v. State, 645 So. 2d 965 (Fla. 1994). Counsel is not ineffective for not predicting that a trial court might subsequently make an erroneous ruling of law. Further, Petitioner was not prejudiced since it appears from the record that the jury

did not look at the video during deliberations. Therefore, since counsel's performance was not deficient and Petitioner has not shown prejudice, Ground Four will be denied.

**Ground Five:** Trial counsel was ineffective by continuing to represent Petitioner after he disclosed that counsel had a conflict of interest which affected counsel's actions in this case.

In support of Ground Five, Petitioner contends his trial counsel had a conflict of interest because counsel's wife wanted him to withdraw because of the effect his representation might have on his children at home.

In order to prevail in a federal habeas proceeding on a conflict of interest claim, a petitioner must establish that his counsel had an actual conflict which adversely affected his performance. Cuyler v. Sullivan, 446 U.S. 335 (1980). This showing must be based on an adverse or inconsistent interest held by the attorney in the criminal case at hand. Here, the concerns of counsel's wife do not amount to an inconsistent interest adverse to that of Petitioner. Therefore, Ground Five fails.

**Ground Six:** Trial counsel was ineffective by failing to object to the trial court jury instructions regarding the burglary enhancements, where the jury instructions did not require the jury to find the burglary enhancements beyond a reasonable doubt.

In support of Ground Six, Petitioner argues that the jury instructions given by the trial court were improper because they did not require the jury to find the burglary enhancements beyond a reasonable doubt. This issue was addressed by the state post-conviction court and, therefore, to prevail here, Petitioner must show that the post-conviction court unreasonably applied federal law.

To the contrary, the post-conviction court appropriately addressed the issue, reviewed the jury instructions, and determined that the instructions did in fact require the jury to find the aggravating burglary factors beyond a reasonable doubt:

> The Defendant asserts that his counsel was ineffective by failing to object to the trial court's jury instructions regarding the burglary enhancements. The Defendant contends that the jury was not required to find the alleged burglary enhancements beyond a reasonable doubt and absent these aggravating factors, the jury verdict supported only simple burglary. The Defendant relies on <u>Apprendi v. New Jersey</u>,[1] for proposition that the enhancements must be submitted to the jury and proved beyond a reasonable doubt. The Defendant asserts that he was charged and convicted of burglary of a dwelling with assault or battery and burglary of an occupied dwelling. The Defendant claims that the jury instructions failed to inform the jury that it must find the burglary enhancements beyond a reasonable doubt.
>
> The record refutes the Defendant's assertions. Upon review of the jury instructions, the burglary instructions include that to prove burglary; the State must prove beyond a reasonable doubt the following three elements. The jury instructions continue with an instruction for the jury that if they find the Defendant guilty of burglary, then they must consider whether the State has proven aggravating factors which include battery, structure being a dwelling, and the structure was occupied by a human being.[2]
>
>> The punishment provided by law for the crime of burglary is greater if the burglary was committed under certain aggravating circumstances. Therefore, if you find the defendant guilty of burglary, you must then consider whether the State has further proved those circumstances.[3]

---

[1] 530 U.S. 466 (2000).

[2] *See* Jury Instructions (Attach. 3).

[3] <u>Id.</u>

Additionally, the Court instructed the jury regarding reasonable doubt and burden of proof.[4] Accordingly, the Defendant was not prejudiced by his counsel's omission and, thus, the Defendant's motion is denied on this basis.

Exh 13: Order Denying Defendant's Second Amended Motion for Postconviction Relief at pp. 6-7.

Since the instructions appropriately explained to the jury that they must find the aggravating burglary factors beyond a reasonable doubt, Petitioner's trial counsel was not ineffective for failing to object to them. It is not ineffective assistance of counsel to fail to make a meritless objection. Therefore, Ground Six fails.

**Ground Seven:** Trial counsel was ineffective by failing to object to the use of "and/or" regarding victims in the burglary jury instructions.

The jury instruction about which Petitioner complains appears in the record at Exhibit 21, volume 4: T 405:

> THE COURT: . . . To prove the crime of burglary, the State must prove the following three elements beyond a reasonable doubt:
>
> One, David L. McLeod entered a structure owned by or in the possession of Tiffany Gillam and/or Amy Spire and/or Julie Blackwell and/or Shay Sullivan.
>
> Two, David L. McLeod did not have the permission or consent of Tiffany Gillam and/or Amy Spire and/or Julie Blackwell and/or Shay Sullivan or anyone authorized to act for him or her to enter the structure at the time.
>
> Three, at the time of entering the structure, David L. McLeod had a fully-formed conscious intent to commit a crime in that structure.

---

[4] Id.

> Proof of the entering of a structure stealthily and without the consent of the owner or occupant may justify the finding that the entering was with the intent to commit a crime if, from all the surrounding facts and circumstances, you are convinced beyond a reasonable doubt that the intent existed.

(Exh 21: Vol. 4: T 405).

The verdict form for the burglaries charged in Counts Two, Three, Four and Five included the names of the individual victims whose residences were alleged to have been burglarized. See Exhibit 21, volume 1: R 66-67. The instructions given together with the verdict form are neither misleading nor confusing. The state post-conviction court addressed this issue appropriately:

> The Defendant claims that his counsel was ineffective by failing to object to the use of "and/or" regarding the victims in the burglary jury instructions. In support, the Defendant contends that fundamental error occurred "when the trial court issues jury instructions that are framed in such a way to allow the jury to return a guilty verdict based upon a finding that by committing one of the elements of the crime as to one victim, the defendant could be said to have committed that same element as to the other victim."[5] The Defendant asserts that his counsel should have objected to the "and/or" basis in these instructions.
>
> The Defendant erroneously relies on Tindle v. State.[6] In Tindle, the Fifth District Court of Appeal's holding is limited to jury instructions on the elements of assault. In the present case, the jury instructions that the Defendant finds problematic were on the elements of burglary. Upon review of the jury instructions and verdict form, the Court finds the Defendant's counsel's

---

[5] *See e.g.* Tindle v. State, 832 So. 2d 966 (Fla. 5th DCA 2002)(trial court erroneously instructed the jury so as to allow it to return a guilty verdict on a n aggravated assault charge based upon a finding that by threatening one person the defendant created fear in the other person).

[6] Id.

omission was not deficient.[7] Accordingly, the Defendant's motion is denied on this basis.

Exh 13: Order Denying Defendant's Second Amended Motion for Postconviction Relief at p. 7.

The jury instruction was proper. The state post-conviction court did not unreasonably apply federal law in rejecting this claim. And, trial counsel was not ineffective for failing to object to this instruction. Therefore, Ground Seven fails.

**Ground Eight:** Trial counsel was ineffective by failing to object to the prosecutor's improper closing argument.

It is not improper for counsel for either party to ask the jury not to base their verdict on sympathy or prejudice, but only on the evidence presented. In fact, this same statement is included in the federal jury instructions in criminal trials. And that is what the prosecutor said in the portion of his closing argument to which McLeod now faults his counsel for not objecting. The state post-conviction court found the claim to be without merit and appropriately said:

> The Defendant asserts that his counsel was ineffective by failing to object to the prosecutor's improper closing arguments. In support, the Defendant contends that by the prosecutor making the comment that, "I'm not going to say that." The Defendant cites part of the prosecutor's closing statement in which he said:
>
>> Now I'm not going to get up here and say, you know, because this involves a five- year-old child, just because of that you have to find this man guilty because that's such a reprehensible act. I'm not going to say that. (T-366-67).

---

[7] *See* Attach. 3 and Verdict Form, (Attach. 4).

The Defendant claims that by making these comments in his close, the prosecutor invited the jury to convict the Defendant for some other reason than that the State proved his case beyond a reasonable doubt. The Defendant relies on Covington v. State,[8] for the proposition that it is an error for the prosecutor to invite the jury to convict on other reasons than the State has proven the defendant's guilt beyond a reasonable doubt.

The Defendant bases his argument on Covington, in which the Third District Court of Appeal held that the prosecutor's comments during closing argument misstated the burden of proof but the Court found that the error was harmless. Upon review of the record and the context of the Prosecutor's comments during his closing statement, he did not misstate the burden of proof. The Prosecutor, following the comments the Defendant relies on, goes on to say:

> I'm not going to say that. I'm going to say because the evidence in the case tells you, leads you, commands you to find that verdict, you find him guilty, along with the other charges. Because it wouldn't be just to argue that . . . Likewise, it wouldn't be fair for some juror to think, you know, I bet he was having a really bad day, he was depressed and sad, and drank, and maybe we shouldn't find him guilty because of that, feel sorry for him. Here's a relatively young person. That wouldn't be right either. You've got to base it on the evidence. It wouldn't be right for me to start pounding on the podium, she's only five, you must find him guilty just because of that.
>
> No, its because of the evidence — partly through her, partly through other witnesses — about what happened. The law, the evidence and your common sense. Not sympathy, not bias, not hatred for someone or anger. Just looking at it, applying the law to the facts. That's what you have to do.[9]

The Defendant's counsel's failure to object during the Prosecutor's comments during closing arguments was not prejudicial to the Defendant and, thus, the Defendant's motion on this basis is denied.

---

[8] 842 So. 2d 170, 173 (Fla. 3d DCA 2003).

[9] *See* Attach I at 367.

Exh 13: Order Denying Defendant's Second Amended Motion for Postconviction Relief at pp. 7-9.

Since the argument was proper, McLeod's trial counsel was not ineffective for not objecting. Ground Eight fails for lack of merit.

**Ground Nine:** Cumulative effective of counsel's errors.

Since this Court has found all previous grounds to be without merit, arguing the cumulative effect of those grounds is to no avail. Meritless arguments do not gain merit by adding them together. United States v. Easter, 66 F. 3d 1018 (9th Cir. 1995).

## CONCLUSION

Having determined that none of Petitioner's grounds have merit, the petition will be denied.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on October 6, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2008\08-cv-2505.deny 2254.wpd*